IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CAMBRIDGE STRATEGICS, LLC**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. **3:10-CV-2167-L** |
| v. | § | |
| | § | |
| **WILLIAM COOK, JR., and** | § | |
| **THE CAMBRIDGE GROUP, INC.**, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are: (1) Defendant's Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted Under Fed. R. Civ. P. 12(b)(6), filed November 17, 2010; and (2) Plaintiff's Motion for the Entry of a Preliminary Injunction, field December 1, 2010. After carefully considering the motion, briefs, record, and applicable law, the court **denies** Defendant's Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted Under Fed. R. Civ. P. 12(b)(6), and **grants** Plaintiff's Motion for the Entry of a Preliminary Injunction.

### I. Procedural and Factual Background

Plaintiff Cambridge Strategics, LLC ("Plaintiff" or "Cambridge Strategics") filed its Original Verified Petition and Application for Temporary Restraining Order, Injunctive Relief, and Damages on October 27, 2010, in the 162nd District Court, Dallas County, Texas. Plaintiff asserted claims for breach of fiduciary duty/duty of loyalty, breach of contract, misappropriation of confidential information, unfair competition, tortious interference, conspiracy, and violation of the Texas Theft Liability Act/conversion against Defendants William J. Cook ("Cook") and the Cambridge Group, Inc. ("Cambridge Group") (collectively, "Defendants").

**Memorandum Opinion and Order – Page 1**

In state court, Associate Judge Snelson granted an oral temporary restraining order ("TRO") at 6:30 p.m. on October 27, 2010, during a conference call with the parties. Defendants thereafter removed the case to this court at 9:55 a.m. on October 28, 2010. Judge Snelson signed the TRO order at 12:34 p.m. on October 28, 2010. On November 3, 2010, this court ruled that the state court did not enter an effective TRO because the oral order failed to comply with Rules 680 and 683 of the Texas Rules of Civil Procedure and the written order was signed after the court was removed to this court.

Plaintiff filed an Emergency Motion to Extend Temporary Restraining Order and/or Set Expedited Injunction Hearing on October 29, 2010. The court denied this motion without prejudice because Plaintiff failed to comply with Rule 65 of the Federal Rules of Civil Procedure. On November 17, 2010, Defendants moved to dismiss this civil action pursuant to Rule 12(b)(6).[1] On December 1, 2010, Plaintiff moved for entry of a preliminary injunction. The court expedited briefing on this motion, and it is now ripe for decision.

## II. Legal Standard

### A. Motion to Dismiss – Rule 12(b)(6)

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the

---

[1] Plaintiff filed its response to the motion to dismiss on December 8, 2010, making Defendants' reply due December 22, 2010. The court, however, determines the motion without waiting for Defendants' reply in light of the overlap of the arguments between the motion to dismiss and the motion for preliminary injunction.

court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F. 3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F. 3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan*

*Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

      B.      **Preliminary Injunction – Rule 65**

There are four prerequisites for the extraordinary relief of a temporary restraining order or preliminary injunction. To prevail, Plaintiff must demonstrate: (i) a substantial likelihood of success on the merits; (ii) a substantial threat of immediate and irreparable harm for which it has no adequate remedy at law; (iii) that greater injury will result from denying the temporary restraining order than from its being granted; and (iv) that a temporary restraining order will not disserve the public interest. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Authority v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (en banc). The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted. *Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993. Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the temporary restraining order or preliminary injunction.

### III. Analysis

#### A. Motion to Dismiss

Defendants have moved to dismiss the claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. They contend that the acts alleged by Plaintiff were specifically authorized by the Employment Agreement between the parties. Plaintiff responds that the court must take its pleaded facts as true and that Defendants have alleged facts contrary to those it pleaded.

Defendants argue that Cook was required by his Employment Agreement to analyze, design, and implement strategic planning for school systems on behalf of the Cambridge Group and to build and maintain relationships with clients. They contend that his act of sending a proposal to the Rockdale County School District (the "School District") was proper and required by the Employment Agreement because it was sent in the name of the Cambridge Group, which is owned by Plaintiff. Plaintiff responds that it has alleged that Cook contacted the School District without its authorization or knowledge and that any allegations to the contrary must be disregarded when ruling on a motion made pursuant to Rule 12(b)(6).

The court agrees with Plaintiff. On a motion under Rule 12(b)(6), the court must accept the facts as pleaded by Plaintiff as true. Plaintiff has alleged that Cook acted without authorization to solicit business from the School District on his own behalf. The court cannot consider the facts alleged in the motion by Defendants because they are contrary to Plaintiff's allegations. Accordingly, the court must deny Defendants' motion to dismiss because, considering the facts in the light most favorable to it, Plaintiff has stated claims upon which relief can be granted.

B.  **Motion for Preliminary Injunction**

Next, the court considers Plaintiff's request for a preliminary injunction. It contends that it has shown a substantial likelihood of success on the merits of its breach of fiduciary duty/duty of loyalty, breach of contract, misappropriation of confidential information, unfair competition, and Texas Theft Liability Act/conversion claims. It further argues that it faces a substantial threat of immediate and irreparable harm, that greater injury will result to it than to Defendants if an injunction is granted, and that an injunction will not disserve the public interest.

Defendants respond that Plaintiff is trying to prevent them from engaging in conduct for which they have legal and contractual rights. They also argue that Plaintiff cannot show the four elements required for a preliminary injunction.

1. **Likelihood of Success on the Merits**

Before considering Plaintiff's specific claims, the court turns to the crux of the parties' dispute: whether Cook's proposal to the School District violated the parties' agreements and the meaning of certain terms in his Employment Agreement.[2] The parties' arguments turn on a construction of the written agreements between them.

Plaintiff contends that Cook breached his Employment Agreement by contacting the School District for his own benefit despite being prohibited from doing so. It contends that it became aware on October 11, 2010, that Cook had contacted the School District and solicited business of the type

---

[2]Under Texas law, "a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." Tex. Bus. & Com. Code § 15.50(a). No party has raised any issue as to the enforceability of the Employment Agreement under these grounds, and the court assumes for the purposes of Plaintiff's motion that the noncompetition clause is enforceable pursuant to section 15.50(a).

and nature that it offers. Plaintiff further contends that it had no knowledge of any proposal submitted by Cook to the School District, that Cook initially denied having knowledge of the project, and that he later "concocted an elaborate story as to why he completely skirted Cambridge Strategics' policies for proposal submission." Pl.'s Brief 4, ¶ 14. Plaintiff terminated Cook's employment on October 13, 2010. Plaintiff maintains that thereafter Cook used its confidential strategic planning documents and attempted to gain business with the School District.

Defendants respond that Cook had a legal right to take the actions he took. They contend that the business proposals at issue are based upon a book written by Cook, *Strategics: The Art and Science of Holistic Strategy*, that was not included in the sale of the Cambridge Group to Cambridge Strategics. Accordingly, they argue that the business engaged in by Cook with the School District did not compete with Plaintiff pursuant to his Employment Agreement. Defendants distinguish between "strategic planning for schools" and "holistic strategy," and argue that Cook's actions fall within "holistic strategy," and are not limited by his Employment Agreement. Defendants argue that the School District had no interest in obtaining traditional strategic planning and that it had rejected such planning offered by Plaintiff. Defendants contend that Cook used his personal intellectual property to aid his employer and that he did not intend to personally benefit from the use of such intellectual property.

The parties entered into two agreements in July 2007: (1) an Asset Purchase Agreement for Plaintiff's acquisitions of substantially all of the assets of the Cambridge Group; and (2) an Employment Agreement between Cook and Cambridge Strategics. The Employment Agreement includes the restrictions upon Cook at issue, a nondisclosure and confidentiality clause and a noncompetition clause.

The nondisclosure clause states that Cook "agrees not: (i) to use, at any time, any Proprietary Information for his own benefit and for the benefit of another; or (ii) to disclose, directly or indirectly, any Proprietary Information to any person who is not a current employee of [Cambridge Strategics] . . . at any time prior or subsequent to the termination of his employment with [Cambridge Strategics]." Pl.'s App. 23 (Employment Agreement ¶ 7(b)). The noncompetition clause set forth restrictions on Cook. Specifically, Cook agreed that

> until the later of: (i) July 1, 2010; or (ii) the anniversary of Employee's separation from [Cambridge Strategics], Employee will not . . . directly or indirectly . . . :
>
> i. contact, solicit sales of, or sell or deliver any product, service or system of the kind and character sold, provided or distributed by him on behalf of [Cambridge Strategics] to any person, association, corporation or other entity that he contacted, solicited, called upon, or served, or that he directed others to solicit, call upon, or serve, on behalf of [Cambridge Strategics], during his employment at [Cambridge Strategics]; or
> ii. contact, solicit, attempt to solicit, or seek to divert from the business or patronage of any person, association or corporation with whom or which Employee had business relations on behalf of [Cambridge Strategics] or with whom or which he met or communicated with, or with whom or which he directed others to meet or communicate with, for the purpose of offering to sell or soliciting for sale any product, service, or system of the kind and character sold, provided or distributed by him, on behalf of [Cambridge Strategics], during his employment at [Cambridge Strategics].

*Id*. at 24-25 (Employment Agreement ¶ 9(e)).

Defendants point to the Asset Purchase Agreement and the Employment Agreement, which both define the term "Business" through reference to the Cambridge Group as "the leading provider of seminars and consulting services to governmental entities and school systems throughout the

United States for the purpose of analyzing, designing, and implementing educational strategic planning systems for such entities and school systems." *Id*. at 19 (Employment Agreement); Def.'s App. 9 (Asset Purchase Agreement, hereinafter "APA"). They contend that under the Asset Purchase Agreement, certain assets were excluded from the transfer to Plaintiff, including "Retained Intellectual Property. All items of Intellectual Property listed on Schedule 1(b)(xi) attached hereto." *Id*. at 9 (APA ¶ 1(b)(xi)). Schedule 1(b)(xi) includes: "Book titled 'Strategics: The Art and Science of Holistic Strategy'." *Id*. at 31. (APA Schedule 1(b)(xi)).

Defendants point to limiting language in the noncompetition clause of the Employment Agreement: "[T]he restriction herein contained shall prohibit Employee from competing with [Cambridge Strategics] only in the **line or lines of Business actually conducted by [Cambridge Strategics]** . . . ." Pl.'s App. 25 (Employment Agreement ¶ 9(f)) (emphasis added). They argue that Cook's proposal to the School District related only to "holistic strategy," which does not fall within "the line or lines of Business actually conducted by" Cambridge Strategics and therefore does not violate the Employment Agreement.

The court has carefully reviewed the parties' arguments and evidence, and it concludes that, at this juncture, Plaintiff has established that the actions taken by Cook violate the Employment Agreement. The court determines that Defendants' interpretation of the Employment Agreement – which creates a distinction between "strategic planning" and "holistic strategy" – is unreasonable. First, neither the Employment Agreement nor the Asset Purchase Agreement makes this distinction, and the court does not find that the reservation of intellectual property relating to a single book creates such a distinction.

Second, even if there were such a distinction, the evidence still supports a finding that Cook was engaged in "the line or lines of business actually conducted by" Cambridge Strategics when he sent a proposal to the School District. Defendants' argument relies upon one sentence in the proposal: "Essentially, this proposal is for facilitation of a process that represents a fusion of Strategic Planning and Generative Organization according to the processes and disciplines described in Bill Cook's book, Strategics: The Art and Science of Holistic Strategy." Pl.'s App. 7. Defendants' narrow focus, however, does not consider the title of the proposal, "A Proposal for Strategic Planning," *id*. at 6, or the sentence immediately preceding: "This proposal is based on Cambridge's successful work in over twelve hundred school systems throughout the United States and abroad . . . ." *Id*. at 7. There is no dispute that Cook had contact with the School District while he was working for Cambridge Strategics. Defendants did not submit any evidence to dispute Plaintiff's evidence from its CEO Keith Sockwell that Cook initially denied the existence of a proposal or that his actions ignored company practices and hid the proposal from Plaintiff. It is further undisputed that Cook resubmitted a substantially-identical proposal to the School District in his own name after he was terminated by Plaintiff.

In light of this analysis, the court determines that Plaintiff has shown that it is likely to succeed on the merits of its claims. Specifically, given this reading of the contract and evidence, Plaintiff is substantially likely to succeed on its breach of contract claim, breach of fiduciary duty claim, and misappropriation of confidential information claims. Defendants' arguments in response to these claims rely upon their contentions that Cook's actions were not covered by the confidentiality and noncompetition provisions of the Employment Agreement, and these contentions have been rejected by the court. It does not need to reach Plaintiff's other claims and does not

determine at this time whether Plaintiff is likely to succeed on the merits of its unfair competition or Texas Theft Liability Act claims.

### 2. Threat of Immediate and Irreparable Harm

Plaintiff argues that breach of a noncompetition provision is a noncompensable injury for which there is no adequate remedy at law. Defendant responds that Plaintiff cannot be injured by the use of property that it does not own and that the School District had no interest in working with Plaintiff.

The court determines that Plaintiff does have an interest in the proposal submitted by Cook to the School District and that Texas courts have held that violations of such noncompetition agreements do not have an adequate remedy at law. This court has held: "Under Texas law, covenants not to compete present the paradigm of irreparable injury, so that reasonable enforcement appears to be the rule rather than the exception. Tex. Bus. & Comm. Code Ann. § 15.51(a) expressly makes available injunctive relief." *Ruscitto v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 777 F. Supp. 1349, 1354 (N.D. Tex.), *aff'd*, 948 F.2d 1286 (5th Cir. 1991), *cert. denied*, 504 U.S. 930 (1992). The court therefore determines that Plaintiff has shown a threat of immediate and irreparable injury.

### 3. Harm to Plaintiff Versus Harm to Defendants

Next, the court considers the third element – whether Plaintiff has shown that greater injury will result from denying the injunction than from granting it. Cambridge Strategics argues that it has identified the violation of clear legal rights that have been violated by Defendants and that the hardship on Defendants is reasonable to protect its legal rights. Defendants respond that they will be injured because they will be prohibited from engaging in lawful conduct.

The court has considered the arguments and determines that Plaintiff has shown this element. Plaintiff has established the risk of irreparable injury to it, and the court has rejected Defendants' argument that Cook's actions did not violate the Employment Agreement. Accordingly, the court finds that the risk of irreparable injury to Cambridge Strategics outweighs a prohibition on Defendants from violating a noncompetition provision.

### 4. The Public Interest

Finally, the court considers the fourth element – whether a preliminary injunction will serve the public interest. Plaintiffs argue that protecting trade secrets is in the public interest and that an injunction will only affect the parties to this suit. Defendants respond than an injunction will harm the public and public school systems. Specifically, they contend that the sought injunction will preclude public school systems from obtaining valuable advice and counsel from Cook in the area of holistic planning.

The court determines that this element has also been satisfied. Defendants have failed to quantify the benefit to the public or public schools from Cook's holistic planning advice. Moreover, the services Cook seeks to offer have been sold to Cambridge Strategics, which may still provide them to the public. The court finds that enforcing the parties' contract will serve the public interest because the public expects the terms of a contract to be honored. Because Plaintiff has established the four elements under Rule 65 of the Federal Rules of Civil Procedure, the court will grant its motion and enter a preliminary injunction.

## IV. Conclusion and Preliminary Injunction

For the foregoing reasons, the court **denies** Defendant's Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted Under Fed. R. Civ. P. 12(b)(6), and **grants** Plaintiff's Motion for the Entry of a Preliminary Injunction.

Accordingly, it is hereby **ordered** that Defendants William J. Cook, Jr. and the Cambridge Group, Inc., and any collective and respective agents, servants, employees, attorneys, and those persons in active concert or participation with any of them are hereby:

a. **preliminarily enjoined** from directly or indirectly engaging in the same or substantially the same services that Defendants provided for Cambridge Strategics, either individually or on behalf of an entity or organization, in competition with the business of Cambridge Strategics, or its successors or assigns, which is located in, provides services in, or does any business whatsoever in, the counties in which the Defendants performed services for Cambridge Strategics, including all contiguous counties and all counties in which Cambridge Strategics has performed or sold services;

b. **preliminarily enjoined** from directly or indirectly diverting away or attempting to divert away any business from Cambridge Strategics to another company, business, or individual;

c. **preliminarily enjoined** from directly or indirectly contacting, soliciting, attempting to solicit, seeking to do business with, selling any product or service to, or attempting to sell any product or service to, whether initiated by Defendants or the customer, any person, company, organization, entity or business that is or was a customer of Cambridge Strategics during Defendants' tenure with Cambridge Strategics and that Defendants performed services for,

attempted to perform services for, attempt to sell products to, worked with, was provided information about by Cambridge Strategics, or otherwise conduced any business with;

    d.    **preliminarily enjoined** from disclosing, using, or misappropriating any trade secrets or proprietary information from Cambridge Strategics, including customer lists and any other confidential or proprietary information and trade secrets that were acquired in any manner or means by Defendants in the course of their employment with Cambridge Strategics; and

    e.    **preliminarily enjoined** from destroying, canceling, concealing, or altering any documents or information, whether generated, kept, maintained, or stored in paper or electronic form, that may be related to this case.

Rule 65(c) of the Federal Rule of Civil Procedure provides: "The court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Defendants do not specify what damages it may suffer by the issuance of a preliminary injunction, and Plaintiff does not suggest what would be an appropriate bond if the injunction were granted. The court determines that a bond of $25,000 is sufficient.

Accordingly, the court hereby **sets** a bond in the amount of **$25,000**. This preliminary injunction shall not take effect until Plaintiff tenders to the clerk of the court $25,000 cash or a bond for $25,000 in a form approved by the clerk of the court, in compliance with Rule 65(c) of the Federal Rules of Civil Procedure.

**It is so ordered** this 17th day of December, 2010, at 12:15 p.m.

_____
Sam A. Lindsay
United States District Judge