**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **CAMBRIDGE STRATEGIES**, LLC | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | |
| | § | |
| **WILLIAM COOK, JR.** and | § | |
| **THE CAMBRIDGE GROUP, INC**., | § | |
| | § | Civil Action No. **3:10-CV-2167-L** |
| Defendants/Counter-Plaintiffs/Third | § | |
| Party Plaintiffs, | § | |
| v. | § | |
| | § | |
| **GROUP AFFILIATES, LLP**, | § | |
| **KEITH SOCKWELL**, and | § | |
| **STEPHANIE GARCIA**, | § | |
| | § | |
| Third Party Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Third Party Defendants' Motion for Judgment on the Pleadings, filed July 8, 2011; Defendants' Motion for Partial Summary Judgment, filed October 7, 2011; and the parties' Agreed Joint Motion to Modify Scheduling Order, filed December 28, 2011. After carefully considering the motions, responses, briefs, appendices, evidence, record, and applicable law, the court **grants** Third Party Defendants' Motion for Judgment on the Pleadings, **denies** Defendants' Motion for Partial Summary Judgment, and **denies without prejudice** the parties' Agreed Joint Motion to Modify Scheduling Order.

## I.      Factual and Procedural Background

Plaintiff Cambridge Strategies, LLC ("Cambridge Strategies") filed this action on October 27, 2010, in the 162nd Judicial District Court, Dallas County, Texas, asserting claims against former employee William J. Cook, Jr. ("Cook") and Cambridge Group, Inc. ("Cambridge Group") (collectively, "Defendants") for breach of fiduciary duty, breach of an employment contract, misappropriation of confidential information, unfair competition, tortious interference, conspiracy, conversion, and violations of the Texas Theft Liability Act.   Cambridge Strategies also sought a temporary restraining order and permanent injunction.

According to Cambridge Strategies' Verified Petition, it is a provider of strategic planning for school districts.  Cambridge Strategies was formed in 2007 when it acquired substantially all of the assets of Cambridge Group, including the company's good will, from Cook and his wife.  When Cambridge Strategies acquired Cambridge Group, it hired Cook to act as the president of Cambridge Strategies.  Cambridge Strategies and Cook entered an employment agreement that, among other things, prohibited Cook from using Cambridge Strategies' confidential information for his own benefit and from soliciting or diverting business away from Cambridge Strategies.  Cambridge Strategies alleges that on or about October 2010, Cook contacted, without Cambridge Strategies' knowledge, the Rockdale County, Georgia School District about a proposal for Cambridge Group to perform services of the type and nature offered by Cambridge Strategies.  By contacting the school on behalf of Cambridge Group rather than Cambridge Strategies, Cambridge Strategies contends that Cook violated his employment agreement with Cambridge Strategies and breached his duty of loyalty and fiduciary duties owed to Cambridge Strategies.

Defendants removed the action to federal court on October 28, 2010, and thereafter filed a motion to dismiss the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure that was denied by the court.  On December 29, 2010, Defendants filed an answer and asserted various affirmative defenses to Cambridge Strategies' claims.  Defendants also asserted the following counterclaims and third party claims against Cambridge Strategies and Third Party Defendants Group Affiliates, LLP ("Group Affiliates"), Keith Sockwell ("Sockwell"), and Stephanie Garcia ("Garcia") (collectively "Third Party Defendants"): (1) breach of contract (Cambridge Strategies); (2) discharge in breach of employment agreement (Group Affiliates); (3) anticipatory breach of contract (Cambridge Strategies and Group Affiliates); (4) promissory estoppel (Cambridge Strategies and Group Affiliates); (5) quantum meruit (Cambridge Strategies and Group Affiliates); (6) tortious interference with existing contract (Cambridge Strategies and Third Party Defendants); (7) tortious interference with prospective contractual relations (Cambridge Strategies and Third Party Defendants); (8) abuse of process (Cambridge Strategies and Third Party Defendants); (9) respondeat superior (Cambridge Strategies); and (10) civil conspiracy (Cambridge Strategies and Third Party Defendants).  Plaintiff and Defendants both seeks attorney's fees and costs.

Three days after Third Party Defendants moved for judgment on the pleadings, Defendants filed an amended answer, amended third party complaint, and amended counterclaims.  The counterclaims and third party claims in Defendants' amended pleading are substantially similar to those in the original pleading, except that they include allegations that Third Party Defendants are "liable in contribution and indemnity" for their malfeasence and tortious interference with Cook's ability to perform under the employment and asset purchase contracts, as well as Cook's contractual relationship with Cambridge Strategies.  Doc. 41, ¶¶ 63, 65 and p. 29. Specifically, Defendants allege

in paragraph 63 of the amended pleading with regard to Cambridge Strategies breach of contract and

breach of fiduciary duty claims:

> 63.     In addition and or the alternative to the foregoing, to the extent that
> Dr. Cook or The Cambridge Group were to be held liable under Plaintiff's claims for
> breach of contract or breach of fiduciary duty (which they should not be), Third-Party
> Defendants Group Affiliates, LLP, Stephanie Garcia and Keith Sockwell are liable
> in contribution and indemnity to Defendants for Plaintiff's claim against Defendants
> as a result of Third-Party Defendants' intentional and willful interference with the
> contract between Dr. Cook and Cambridge Strategics. It was the Third-Party
> Defendants' intention to preclude Dr. Cook from performing under the agreements
> referenced in Plaintiffs' Petition so that he would be forced to re-purchase Cambridge
> Strategics at a highly inflated price, which has floundered since Keith Sockwell took
> over management. Thus, Third-Party Defendants decided to hamstring Dr. Cook's
> ability to perform under the agreements referenced in Plaintiffs' Petition.

*Id.* ¶ 63.  Defendants similarly allege in paragraph 65 of the amended pleading:

> 65.     Indeed, it was this basic lack of essential office supplies and
> substantial disconnect in communication that resulted in both the creation of the
> Rockdale Proposal and Cambridge Strategics' misunderstanding of the proposal as
> being competitive against Cambridge Strategics, since the proposal inadvertently
> bore an older version of the Cambridge logo – the only logo that remained available
> to Dr. Cook.  It is this very proposal on which Cambridge Strategics filed suit, and
> which is described in the affidavits of Stephanie Garcia.  Garcia has continued to
> perpetrate this tortious interference with contract through the submittal of her false
> affidavits in Dallas County State Court and this Court.  To the extent any liability
> against Dr. Cook and the Cambridge Group is premised on the creation of this
> proposal, Third-Party Defendants should be held liable for contribution and
> indemnity, since it was their malfeasance and interference with Dr. Cook's ability to
> properly perform under the agreements referenced in Plaintiffs' Petition that resulted
> directly in this liability (in the unlikely event any such liability is found).

*Id.* ¶ 65.  In their prayer for relief, Defendants request that they be indemnified as follows:

> In addition, and in relation to William J. Cook, Jr. and The Cambridge Group,
> Inc.'s counterclaims against Cambridge Strategic Services, LLC and their third-party
> claims against Keith Sockwell, Stephanie Garcia, and Group Affiliates, LLP, William
> J. Cook, Jr. and the Cambridge Group, Inc. respectfully ask that the Court render
> judgment against Cambridge Strategic Services, LLC, Keith Sockwell, Stephanie
> Garcia and Group Affiliates, LLP, jointly and severally, providing indemnity from

Third-Party Defendants against the breach of contract and breach of fiduciary duty claims asserted by Cambrige [sic] Strategies. . . .

*Id.* 29.

According to Defendants' amended pleading, Cook formed Cambridge Group in 1977 and operated the company out of Montgomery, Alabama. Defendants allege that in 2007, Cook and Cambridge Group entered an asset purchase agreement with Group Affiliates (rather than Cambridge Strategies) for the sale of certain of Cambridge Group's assets to Group Affiliates. On the same day, Cook entered a five-year employment agreement with Cambridge Strategies that provides if Cook's employment is terminated prematurely without cause, Cambridge Strategies will be required to pay him a certain sum of money. Although not entirely clear from the parties' pleadings, it appears that Cambridge Strategies and Group Affiliates are related entities.

According to Defendants, Cook was essentially forced out of Cambridge Strategies by Sockwell, the chief executive officer of Cambridge Strategies Services, another entity presumably related to Cambridge Strategies. Defendants allege that Sockwell, who operated out of Cambridge Strategies' Plano, Texas office, excluded Cook from senior management conferences and decision-making sessions. Additionally, Defendants allege that Sockwell took away Cook's ability to do his job by closing the Montgomery office and thereby depriving him of access to basic office supplies.

In September 2010, Group Affiliates approached Cook about repurchasing Cambridge Group's assets. Cook declined the offer and was fired approximately five days later. Defendants contend that Cook's dealings with the Rockdale County Georgia School District are a mere pretext for his wrongful termination to avoid paying him money owed under the employment agreement.

Defendants further contend that Garcia perjured herself by submitting two false affidavits in support of Cambridge Strategies' request for injunctive relief.

On October 7, 2011, Defendants filed a motion for partial summary judgment that is limited solely to the issue of whether summary judgment is proper as to Cambridge Strategies's request for attorney's fees. Before the court could rule on the outstanding motions, the parties filed an agreed request to extend the discovery, mediation, dispositive motion, and trial deadlines. The court first considers Third Party Defendants' Motion for Judgment on the Pleadings.

## II.    Third Party Defendants' Motion for Judgment on the Pleadings

Third Party Defendants move pursuant to Rules 12(c) and 14 of the Federal Rules of Civil Procedure for dismissal of Defendants' action against them.

### A.    Rule 12(c) Standard for Judgment on the Pleadings

Any party may move for judgment on the pleadings after the pleadings are closed and when it would not delay the trial. Fed. R. Civ. P. 12(c). A motion brought pursuant to Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (citation omitted). A court, when ruling on a motion for judgment on the pleadings pursuant to Rule 12(c), applies the same standard as that used for a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Doe v. MySpace, Inc.,* 528 F.3d 413, 418 (5th Cir. 2008) (citation omitted); *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 313 n.8 (5th Cir. 2002) (citation omitted).

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F. 3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F. 3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central

to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co.,* 313 F.3d at 312.  While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950 (citation omitted).  Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted).  The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim.  *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

Although there is no specific language in Rules 7 or 12 of the Federal Rules of Civil Procedure that states when the pleadings close, the following is accepted by numerous federal courts as to when the pleadings close:

> Rule 7(a) provides that the pleadings are closed upon the filing of a complaint and an answer (absent a court-ordered reply), unless a counterclaim, cross-claim, or third-party claim is interposed, in which event the filing of a reply to a counterclaim, cross-claim answer, or third-party answer normally will mark the close of the pleadings.

5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 at 213 (3d ed. 2004) (footnotes omitted).

### B.     The Parties' Contentions

Third Party Defendants contend that none of the claims asserted against them by Defendants has any bearing on Defendants' liability in this action to Cambridge Strategies.  They cite Fifth

Circuit authority for the proposition that under Rule 14 of the Federal Rules of Civil Procedure, the use of impleader is only permitted when the third party defendant's potential liability is inextricably tied to the main claim. Third Party Defendants therefore maintain that a third party complaint is not the proper vehicle for raising independent claims under Rule 14, even if they arise out of the same general set of facts as the main claim. Because none of the claims asserted against Third Party Defendants alleges that they are liable for all or some of the claims Cambridge Strategies has alleged against Defendants, Third Party Defendants contend that the claims against them must be dismissed.

Defendants counter that Third Party Defendants' motion is premature as Defendants have since amended their third party claims to include a claim for indemnification. Defs.' Resp. 4 (Defendants seek indemnification "to the extent any liability is imposed on them by Plaintiffs' claims, from Third-Party Defendants because Third-Party Defendants' tortious interference and omissions proximately caused any such liability (should it be found)." Because Defendants amended their pleadings after Third Party Defendants filed their motion for judgment on the pleadings, Defendants contend that the motion is moot.

Third Party Defendants respond that Defendants' amended pleading did not cure the deficiency noted because it is based on the same claims as Defendants' previous pleading. The only difference, according to Third Party Defendants, is that the amended pleading is based on a different theory of damages (indemnification), that is, Defendants seek the indemnification of Cook and Cambridge Group if they are held liable for the claims asserted by Cambridge Strategies. Since Defendants' third party claims are identical to those addressed in their Rule 12(c) motion, Third Party Defendants assert that they should not be required to refile their motion. Additionally, Third Party Defendants request that they be allowed to submit additional briefing if the court decides to

convert their motion to a summary judgment motion. Since Third Party Defendants maintain that dismissal is still proper based on Defendants' amended pleadings, the court decides their motion in light of the amended third party complaint.

### C.     Analysis under Rule 14

Rule 14(a) permits a defending party to sue as a third party plaintiff "a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a). Rule 14 is intended to promote judicial economy by eliminating circuitous actions. *Wells Fargo Bank, N.A. v. Pettus*, No. 3:11-CV-0095-D, 2011 WL 3586405, at *2 (N.D. Tex. Aug. 16, 2011) (Fitzwater, J.) (citing 6 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1442, at 339 (3d ed. 2010 & Supp. 2011)). Impleader, however, is only appropriate in cases where the third party's liability is derivative or dependent on the outcome of the main claim. *United States. v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 751 (5th Cir. 1967); *American Express Travel Related Servs. Co. v. Beaumont*, 2002 WL 31298867, at *2 (N.D. Tex. Oct. 9, 2002) (Buchmeyer, J.) ("[T]he procedural device of impleader [may only be used] when the third party defendant's potential liability is dependent upon the outcome of the main claim."). "[T]he third party must necessarily be liable over to the defendant for all or part of the plaintiff's recovery." *Joe Grasso & Son*, 380 F.2d at 751. Rule 14 cannot be used as "a vehicle for the trying together of separate and distinct causes of action, or for the introduction, into the main action, of several parallel, but independent, actions, or separate and independent claims." *Majors v. American Nat'l Bank of Huntsville*, 426 F.2d 566, 568 (5th Cir. 1970) (per curiam) (quotation marks and citations omitted).

"The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against [him] by the original plaintiff. The mere fact

that the alleged third-party claim arises from the same transaction or set of facts as the original claim

is not enough." *Wells Fargo Bank, N.A.*, 2011 WL 3586405, at *2 (quoting 6 Wright & Miller, §

1446, at 431-32). Thus, dismissal of a third party claim that is an entirely independent claim is

appropriate even if it arises from the same set of facts as the original claim. *Wells Fargo Bank, N.A.*,

2011 WL 3586405, at *2.

Applying this standard to the case at hand, the dispositive question presented by Third Party

Defendants' motion is whether their liability is derivative or dependent on the outcome of the main

claims that Cambridge Strategies has asserted against Cook and the Cambridge Group. The essence

of the third party claims is that, but for the tortious conduct of Group Affiliates, Sockwell, and

Garcia, Cook could have performed his responsibilities under the contracts at issue, and Defendants

would not be liable to Cambridge Strategies for the claims asserted. This argument, however, has

been rejected in this circuit. *Southeast Mortg. Co. v. Mullins*, 514 F.2d 747, 750 (5th Cir. 1975)

("The suggestion that a separate and independent claim can be made the proper subject of a third

party complaint because, but for the violation of duty alleged the main claim would not have

matured, has been rejected by [the Fifth Circuit] and other courts.").

The flaw in Defendants' argument is that Cook's obligations to Cambridge Strategies under

the employment agreement are not dependent on Third Party Defendants' alleged tortious

misconduct. *See Wells Fargo Bank, N.A.*, 2011 WL 3586405, at *3 (citing *Autoronic Sys., Inc. v.

HRSG, Inc.*, No. Civ. A. H-07-1566, 2008 WL 8053985, at *1 (S.D. Tex. Mar. 4, 2008) (denying

impleader where third-party plaintiff alleged he was unable to pay plaintiff subcontractors because

third-party defendant failed to make timely payments under separate contract)). Simply put, Third

Party Defendants cannot be secondarily liable for Cook's alleged breach of the employment

agreement or breach of loyalty and fiduciary duty to Cambridge Strategies, even if Cambridge

Strategies had no cause of action against Cook and Cambridge Group absent Third Party Defendant's

actions.  Consequently, Defendants' third party claims do not emanate from the main claims but exist

wholly independent of them.  *Southeast Mortg.*, 514 F.2d at 750.  Even if the third party claims arise

out of the same general set of facts as Cambridge Strategies claims against Defendants, this is not

a proper basis for impleader under Rule 14.  *Joe Grasso & Son*, 380 F.2d at 751 ("[A]n entirely

separate and independent claim cannot be maintained against a third party under Rule 14, even

though it does arise out of the same general set of facts as the main claim.").  That Defendants have

couched their third party claims in terms of contribution and indemnity does not change the nature

of the underlying claims or the result under Rule 14.  For the same reason herein stated, Defendants

Cook and Cambridge Group have failed to state a claim upon which relief can be granted, and Third

Party Defendants Group Affiliates, Sockwell, and Garcia are entitled to judgment on the pleadings.

Additionally, although Defendants did not request to amend their pleadings again, the court believes

that permitting any further attempts to amend pleadings would be an inefficient use of the parties'

and court's resources, would cause unnecessary and undue delay, and would be futile.  Accordingly,

the court **grants** Third Party Defendants' Motion for Judgment on the Pleadings.

## III.    Summary Judgment Motion on Cambridge Strategies' Claim for Attorney's Fees

Defendants' motion for partial summary judgment is limited to the issue of whether

Cambridge Strategies' claim for attorney's fees should be dismissed.  Defendants contend that

because Cambridge Strategies failed to timely disclose its experts, it cannot provide competent

testimony in support of its claim for attorney's fees.  Cambridge Strategies counters that it is both

a plaintiff and a defendant, and it filed its expert designations by the August 4, 2011 deadline for

expert designations applicable to the defendants.  Its designations include two attorneys from the law firm McCathern Mooty Ginke, L.L.P., who are expected to testify regarding attorney's fees, as well as their education, training, and experience.  Cambridge Strategies  contends that Defendants did not move to strike their experts on attorney's fees, and even if their motion is construed as a motion to strike and the court determines that Cambridge Strategies was required to designate or disclose the names of its experts by the earlier deadline of July 5, 2011, Defendants have suffered no prejudice as required by Rule 37(c)(1) of the Federal Rules of Civil Procedure.

Rule 37(c)(1) states: "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or is harmless*." Fed. R. Civ. P. 37(c)(1) (emphasis added).  Here, Cambridge Strategies's failure to disclose its two attorney's fees witnesses appears to been an inadvertent oversight or misunderstanding as to the parties' disclosure deadlines.  More importantly, Defendants do not contend they were prejudiced in any way.  They had the opportunity to depose Cambridge Strategies's experts on attorney's fees and seek other discovery.  Furthermore, as noted in one of the cases cited by Defendants, attorneys testifying solely on the topic of attorney's fees are not generally required to provide expert reports, and Defendants do not contend that Cambridge Strategies's attorney's fees witnesses were required to submit expert reports.  *See Kondos v. Allstate Texas Lloyds*, No. 1:03-CV-1440, 2005 WL 1004720, at *18 (E.D. Tex. Apr. 25, 2005) (citing *Wright v. Blythe-Nelson*, No. 3:99-CV-2522-D, 2001 WL 804529, at *6 (N.D. Tex. July 10, 2001) (Fitzwater, J.)).  As explained by the court in *Wright*:

> This court has typically treated the designation of attorney's fee experts differently from other experts. In most instances, as in the present case, Rule 54(d) provides that attorney's fees are decided by the court on motion filed after the entry of judgment.

*Id.* This court routinely handles attorney's fees that are not part of damages pursuant to Rule 54(d)(2) postverdict. In the rare case that warrants the deposition of an attorney, the court will permit it. This court has never granted a motion for summary judgment on attorney's fees prior to verdict. Having considered the parties' arguments, the court concludes that there is no basis to vary from its usual approach. After the entry of judgment, the parties' will have sufficient opportunity to brief the issue of attorney's fees and present evidence and authority in support of or against an application for attorney's fees. The court therefore **denies** Defendants' summary judgment motion on the issue of attorney's fees.

## IV.    Motion to Modify the Scheduling Order

Before the court can modify a scheduling order, the movant must first show "good cause" for failure to meet the scheduling order deadline under Rule 16(b). *S & W Enters., L.L.C. v. Southwest Bank of Alabama*, 315 F.3d 533, 536 (5th Cir. 2003). A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b). The good cause standard requires the "party seeking relief to show that the deadlines [could not] reasonably be met despite the diligence of the party needing the extension." *S & W Enters.*, 315 F.3d at 535 (citation omitted). In deciding whether to allow an amendment to the scheduling order, a court considers: (1) the explanation for the party's failure to meet the deadline; (2) the importance of the amendment to the scheduling order; (3) potential prejudice if the court allows the amendment; and (4) the availability of a continuance to remedy such prejudice. *Id.* (internal quotation marks, brackets, and citations omitted).

Pursuant to the scheduling order entered by the court on April 11, 2011, this case is set for trial on the court's four-week docket beginning March 5, 2011, with the parties' initial pretrial material due February 6, 2011.  The deadlines to complete discovery/mediation and file dispositive motions expired on September 15, 2011, and October 17, 2011, respectively.  The parties seek to extend the trial of this case and pretrial deadlines to July 2012, and seek to **revive** the discovery/mediation and dispositive motion deadlines to April 15, 2012.

Prior to December 28, 2011, the parties did not request an extension of the trial date, pretrial materials deadline, or the discovery, mediation, and dispositive motion deadlines.  Instead, they waited until several months after the discovery and dispositive motion deadlines had passed to seek an extension.  The parties provide no explanation for the requested extension or the delay in seeking the extension other than to state conclusorily, "[t]here is good cause to modify the scheduling order because the parties have diligently attempted to comply with the Order but cannot reasonably meet the current schedule."  Mot. to Modify 2.  The court determines that this statement is not sufficient to establish good cause to modify the scheduling order as requested pursuant to Rule 16(b)(4).  Accordingly, the parties' motion will be **denied without prejudice**.

## V.      Conclusion

For the reasons herein stated, the court **grants** Third Party Defendants' Motion for Judgment on the Pleadings, **denies** Defendants' Motion for Partial Summary Judgment, and **denies without prejudice** the parties' Agreed Joint Motion to Modify Scheduling Order.

**It is so ordered** this 23rd day of January, 2012.

Sam A. Lindsay
United States District Judge